IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | 3:19-cr-00294-007 |
| Plaintiff, | Judge James G. Carr |
| v. | **ORDER** |
| Corey Goings, | |
| Defendant. | |

Defendant Corey Goings seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 998). He seeks release from his current confinement at a Bureau of Prisons (BoP) halfway house in his hometown, Toledo, Ohio. He has approximately five weeks until his outdate of March 7, 2023.[1] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Feb. 6, 2023). At that time, he will have completed a mandatory five-year term that I imposed on March 17, 2022.

Pursuant to a Plea Agreement, (Doc. 708), Defendant plead guilty on May 11, 2021 to possession with intent to distribute drugs. He had been part of a thirty-one-defendant drug trafficking organization (DTO). The DTO had operated for about eight years until return of the initial indictment on May 15, 2019. Defendant was arraigned shortly thereafter. He remained in pretrial detention for thirty-six months until entering into BoP custody.

---

[1] Defendant, *pro se,* filed a letter, construed as a Motion for Compassionate Release, on November 14, 2022. The government timely responded on December 15, 2022. Defendant, this time through counsel, filed a Reply on January 3, 2023. I am filing this Order approximately one week after I learned that it was decisional.

1

Defendant, according to the Presentence Report (PSR), was not one of the DTO's leaders or organizers. His base offense level was twenty-three (23). (Doc. 916, pgID 7322). At sentencing I determined he had a criminal history score of two (2). This resulted in a Guideline Range of 60-63 months. (Doc. 989, pgID 8464).That did not matter: Defendant was subject to a mandatory minimum sentence of five years, which I imposed on March 17, 2022. Upon release, he will serve a four-year term of supervised release.

Defendant, in his motion, seeks his release to home confinement. That option is not available: as long as a defendant is in BoP custody. The BoP alone determines Defendant's place of confinement. 18 U.S.C. § 3621(b). Hence, construing Defendant's *pro se* motion liberally, I deem him to be asking for immediate release.

As "extraordinary and compelling reasons" Defendant states: 1) he desires to provide in-home care for his ninety-two year old mother, whom, he states, has been "abandoned" in a nursing home; 2) he has multiple serious life-affecting medical conditions that, in his view, the BoP has failed to adequately treat; and 3) due to his thirty-six month pretrial detention, he was unable to engage in programming that would have resulted in an additional year of good time credit, arguing by now, he would have completed his sentence.

In other words had his case and pretrial detention ended – and his imprisonment begun – sooner, Defendant would have been freed months ago.

Are these circumstances, either singly or in sum, "extraordinary and compelling reasons" to grant his immediate release?

The government thinks not. (Doc. 1004). It does not dispute Defendant's exhaustion of administrative remedies, or, very vigorously, whether his proffered reasons are "extraordinary

2

and compelling". It focuses its argument *contra* release on the 18 U.S.C. § 3553(a) sentencing factors.

In doing so, the government's brief highlights: 1) Defendant's providing the buy money for a kilo of cocaine; 2) when apprehended, Defendant fled, a high-speed chase ensued, and he had a firearm in his possession; and 3) the PSR's fourteen pages of convictions and dismissed charges, many involving felonies, drug-related crimes, and assaults. (Doc. 1004, pgID 8705, citing Doc. 916, pgID 7315, 7322-35).

Along the way, the government notes that Defendant had the buy money for nearly a kilogram of cocaine. (*Id,*). Though not the entirety of its opposition, its emphasis on the criminal aspects of Defendant's history and personality predominate. The government focuses primarily on Defendant's prospective danger to the community.

Also in support of its argument, the government recites Defendant's underlying criminal conduct – providing the funds for the purchase of nearly a kilogram of cocaine; possession of a firearm; and his apprehension only following a high-speed chase and flight on foot. (Doc. 1004, pgID 8704). It also highlights Defendant's criminal history, which spanned pages of the PSR and included multiple felony and multiple drug-related convictions. (*Id.,* citing Doc. 916, pgID 7322-28). The government also points to seven additional pages of charges, dismissals, and arrests, many of which manifest activities that had led to his many convictions, and some of which involved alleged assaultive conduct. (*Id.,* citing Doc. 916, pgID 7328-35).

On the other hand, the government pays relatively scant attention to, and does not vigorously challenge his claim that, but for his prolonged detention, he would have engaged in prison programs resulting in additional good time and release by now.

To be sure, there is an explanation as to why it took so long from arrest to sentencing. He was one of thirty-one (31) defendants in a complex drug conspiracy case. These cases take a lot of time to conclude. In due course, all defendants, including the ringleader, Pedro Negrin, plead guilty. However, not all the dominoes fell at the same time the first one did.

These facts explain why it took so long from Defendant's arrest to his sentence. But, based on the record before me, I conclude that the consequences – denial of opportunities for good time credit reducing the length of his sentence – is, in this case, an "extraordinary" reason to grant his motion to go home now.

I am also persuaded that, notwithstanding Defendant's lengthy record of crimes, arrests, convictions, and serious, but dropped charges, applying the § 3553(a) factors supports immediate release. Foremost, among these is the overarching purpose of avoiding unwarranted sentencing disparities. Which appears already to have occurred.

Defendant points to two comparator fellow inmates at FCI who, though convicted of his offense, served less of their mandatory five-year terms because they served enough time in prison to qualify for the programs that were not available to Defendant.

Next, I do not believe that granting release now poses any greater danger to the community than his release in five weeks. Once out, Defendant is going to do whatever he is going to do. And he will be doing it for the next four years under supervised release. Indeed, release now can, to an extent, moderate whatever bitterness he may feel or has felt on seeing his comparators doing less time for the same conviction. This can, in its own modest way, enhance the likelihood of success while on supervised release and thereafter.

On the other hand, such modest leniency is not likely to reduce the public deterrent effect of the Defendant's original sentence. It is the original specter of five years that will deter others,

4

who are aware that is the consequence of the crime committed. The public effect, to the extent it occurs, happens at pronouncement, not completion, of a criminal sentence.

Similarly, release now is hardly likely to diminish or denigrate the individual deterrence of Defendant's arrest, prosecution, and conviction - an effect that four years of supervised release should buttress.

Finally, I believe that this modest, and arguably overdue, bit of grace is just. And that, those who come to learn of it will gain enhanced respect for the law.

## Conclusion

For the foregoing reasons, I find that "extraordinary and compelling reasons" exist to grant Defendant's motion. I also find that each of the § 3553(a) factors favors granting his motion.

It is, accordingly, hereby

ORDERED THAT:

1. Defendant's Motion for Compassionate Release (Doc. 998) be, and the same hereby is granted;

2. Defendant shall - within twenty-four (24) hours of the entry of this Order - be discharged from the custody of the Bureau of Prisons; and

3. Within seventy-two hours of his release from custody, Defendant shall report in person to the Office of the United States Pretrial Services and Probation Office, 1946 N. Thirteenth St., Suite 292, Toledo, Ohio 43604 to begin his four-year term of supervised release.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge